**Hazel Anna WOLF, Appellant,**

v.

**John P. BOYD, District Director, Immigration and Naturalization Service, Appellee.**

**No. 15101.**

United States Court of Appeals
Ninth Circuit.

Oct. 24, 1956.

Rehearing Denied Jan. 19, 1957.

C. T. Hatten, Dwight M. Stevens, Seattle, Wash., Lloyd E. McMurray, San Francisco, Cal., for appellant.

Charles P. Moriarty, U. S. Atty., Richard F. Broz, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before DENMAN, Chief Judge, and BONE and BARNES, Circuit Judges.

BARNES, Circuit Judge.

Petitioner admittedly is subject to, and under an order for deportation. Such order is valid and final. Her original hearing started in 1949. In 1951 she was found deportable by the Hearing Officer, on the charges contained in the warrant of arrest, namely, that she was a member of an organization which advocated the overthrow of the Government of the United States, that she circulated written and printed matter so advocating, and that after her entry she was an alien who was a member of the Communist Party of the United States.

In 1952, the petitioner appealed to the Commissioner of Immigration. He adopted the decision of the Hearing Officer. Later that year an appeal was dismissed by the Board of Immigration Appeals.

Petitioner instituted an action for judicial review in the District Court. This was heard and ordered dismissed in 1953; and the dismissal was affirmed in this Court in 1954, with rehearing denied. Wolf v. Boyd, 9 Cir., 215 F.2d 377.

In 1955 the Supreme Court denied her petition for certiorari, 348 U.S. 951, 75 S.Ct. 438, 99 L.Ed. 743.

As the lower court so aptly stated in this proceeding:

"It is conceded by petitioner for the purpose of this action at least that all proceedings resulting in the order and warrant of deportation were fair, regular, and in compliance with statute, and that she has exhausted judicial review except so far as it may relate to an application to suspend deportation under the provisions of Sec. 244 of the Immigration and Nationality Act of 1952."

This is a judicial review of such an application heretofore denied by the District Court on January 27, 1956. Petitioner had filed a motion to reopen the deportation proceedings. It was addressed to the Board of Immigration Appeals, and was based on the 1952 Act, 8 U.S.C.A. § 1254(a) (5).

Petitioner alleged that she came within "each and every one of the provisions of Sec. 244(a) (5)" in that:

(a) She was deportable under Paragraph (6) of Sec. 241(a), 8 U.S.C.A. § 1251(a) (6) (although she had been ordered deported under the 1918 Act);

(b) For an act committed or status acquired subsequent to such entry;

(c) She had been physically present for not less than ten years within the United States, since the commission of the act or assumption of the status;

(d) She can prove, and offers to prove, that during all such period she has been and is of good moral character;

(e) She has not been served with a final order of deportation issued pursuant to the 1952 Act; and

(f) She is a person whose deportation would result in exceptional and extremely unusual hardship "to the alien, and to child, her five grandchildren, her sister and her brother," all of whom were citizens of the United States.

It should be noted parenthetically that after the denial of certiorari by the Supreme Court, a private bill, S. 1425, was introduced on petitioner's behalf by Senator Langer. Petitioner was granted a stay of deportation, both when this bill was introduced in the Senate, and subsequently, when petitioner filed her motion to reopen proceedings before the Board of Immigration Appeals.

Apparently no action, favorable or adverse, was taken upon this bill, either by the Senate or by the Judiciary Committee thereof.

On February 8, 1956, the Board of Immigration Appeals denied petitioner's motion to reopen the hearings. A copy of its memorandum decision reads as follows:

"This case is before us on counsel's motion for reopening which was filed on January 27, 1956.

"On November 5, 1952, we dismissed the respondent's appeal from a decision of the Acting Assistant Commissioner, directing deportation on two charges based on the Act of October 16, 1918 as amended by the Alien Registration Act of 1940, 8 U.S.C. § 137.* Thereafter, habeas corpus proceedings were instituted by the respondent which resulted in a decision adverse to her in the United States District Court. This judgment was affirmed by the United States Court of Appeals of the Ninth Circuit on August 10, 1954, and a rehearing was denied on October 11, 1954. Wolf v. Boyd, 9 Cir., 1954, 215 F.2d 377. On February 28, 1955 certiorari was denied, 348 U.S. 951 [75 S.Ct. 438, 99 L.Ed. 743]. The present motion seeks to have the hearing reopened to permit the respondent to file an application for suspension of deportation under the provisions of Section 244(a) (5) of the Immigration and Nationality Act. We have previously held that an application for discretionary relief must be submitted during the Immigration hearing. Matter of M........., 5 I&N Dec. 472 (1953); Matter of C............, 5 I&N Dec. 630 (1954). In Marcello v. Bonds, 1955, 349 U.S. 302, 313 [75 S.Ct. 757, 99 L.Ed. 1107] the court said that this Board was not bound to consider the question of suspending deportation on the merits where the alien had failed to make an application for that relief at the hearing before the special inquiry officer. Our decisions in Matter of M.......... and Matter of C........, supra, are not controlling because the respondent was not eligible for suspension of deportation under the legislation which was in effect when the hearing was closed on February 12, 1951. However, they do indicate the necessity for promptness in making such an application. The Immigration and Nationality Act, 8 U.S.C.A. § 1101 et seq. became law on June 27, 1952 and was effective on December 24, 1952. Over three years

have elapsed from the latter date and the motion to reopen contains no explanation for the delay in its submission. We note that the Supreme Court handed down its decision in the respondent's case on February 28, 1955 and that counsel's affidavit in support of the motion is dated March 16, 1955. A serious administrative problem would be created for the Service if we were to sanction a procedure by which counsel could remain inactive until deportation was imminent and then upset the proceeding with a motion to reopen for discretionary relief which apparently could have been submitted at any time after December 24, 1952.

"The respondent declined to testify at the hearing on the advice of counsel, the motion to reopen contains no information as to whether the respondent admits that she was a member of the Communist Party and if so, whether such membership has terminated and the date of termination. 8 C.F.R. 6.21 provides that motions to reopen shall be supported by affidavits or other evidentiary material. As applied to this respondent, who is attempting to secure the exercise of administrative discretion, we believe this regulation made it incumbent upon her to furnish her own affidavit concerning the period of her membership in the Communist Party, the extent of her activities while a member, the date when she terminated her membership, and detailed information as to the hardship which would result to her if she is deported.

"8 C.F.R. 6.21 also provides that in any case in which a deportation order is in effect, there shall be included in the motion to reopen a statement by or on behalf of the moving party declaring whether or not the alien is the subject of any criminal proceeding under Section 242(e) of the Immigration and Nationality Act and, where the motion is for the purpose of securing discretionary relief, there is to be included a state-

* Now 8 U.S.C.A. §§ 1101, 1182.

ment as to whether or not the alien is subject to any pending criminal prosecution. The motion fails to comply with these two requirements.

"It is well settled that a rehearing in an administrative proceeding is not a matter of right but lies within the discretion of the agency making the order. United States v. Pierce Auto Freight Lines, Inc., 1946, 327 U.S. 515 535, 66 S.Ct. 687, 90 L.Ed. 821; Interstate Commerce Commission v. Jersey City, 1944, 322 U.S. 503, 514, 64 S.Ct. 1129, 88 L.Ed. 1420. The facts asserted in the motion to reopen are not persuasive that this case merits the exercise of the discretionary authority to suspend deportation.

"After careful review of the record, it is our considered opinion that a reopening of the proceeding is not warranted and counsel's motion will, therefore, be denied.

"Order: It is ordered that counsel's motion be and the same is hereby denied.

"Thos. G. Finucane
Chairman, Board of
Immigration Appeals"

■■ This discloses that the Board denied the motion, but only after examing the facts asserted by petitioner in the motion to reopen, and after a careful review of the entire record. This the Board was entitled to do. United States ex rel. Adel v. Shaughnessy, 2 Cir., 183 F.2d 371; Arakas v. Zimmerman, 3 Cir., 200 F.2d 322.

Petitioner in effect asserts that because she sees fit to designate her petition a "Motion to Reopen" rather than "Application for Suspension of Deportation", she is entitled, as of *right* to an order reopening the matter, and thereafter the right to submit evidence, after which the Attorney General, through his designate, the Board of Immigration Appeals, may exercise discretion as to whether or not the alien should be deported.

Petitioner in effect desires to set up her own rules of procedure as to how and when this discretionary judgment must be exercised.

As the lower court pointed out:

"We are concerned solely with whether petitioner has been granted procedural due process with respect to an act of grace that may be granted petitioner by the Attorney General",

after she has made a showing of compliance with the provisions of Section 244 (c) of the Immigration and Nationality Act of 1952. 8 U.S.C.A. § 1254(c).

To determine this question it is necessary not only to consider the requirement of the section, but likewise the requirements of the regulations which have been adopted to supplement Section 244. Under the renumbered regulations (8 C.F.R.) we find that Section 244 of the Act is governed by regulations bearing the same number, and Section 244.2 of such regulations relates to suspension of deportation. It provides that any application for suspension of deportation "shall be submitted in accordance with, and subject to, the provisions of Section 242.54(d) * * *" which in turn permits filing of applications "at any time during the hearing. * * * The burden of establishing that he meets the statutory requirements for discretionary relief shall be upon the respondent. He may submit any evidence in support of his application which he believes should be considered by a special enquiry officer."

Obviously petitioner could not follow the requirements of the regulations. She therefore insists that she has the right to first make a motion to the Board of Immigration Appeals to reopen the closed case, and *thereafter* present evidence on the issue of discretionary relief.

In United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681, the Supreme Court went into the nature and effect of the regulation prescribing "the procedure to be

followed in processing an alien's application for suspension of deportation." [1]

Clearly petitioner is not entitled to a hearing as a matter of right, if the Board has exercised its discretion.

As Judge Frank of the Second Circuit said in the Adel case:

"The courts cannot review the exercise of such discretion; they can interfere only when there has been a clear abuse of discretion or a clear failure to exercise discretion." United States ex rel. Adel v. Shaughnessy, 1950, 183 F.2d 371, 372.

In the Kaloudis case, decided earlier that year, the facts affirmatively showed a hardship case. The hearing inspector found that deportation "would result in 'serious economic detriment'" to petitioner's wife and child; that petitioner was eligible for suspension of deportation yet that it should not be granted.

Judge Learned Hand, in passing on this sympathy provoking factual situation, had this to say:

"The interest which an alien has in continued residence in this country is protected only so far as Congress may choose to protect it; Congress may direct that all shall go back, or that some shall go back and some may stay; and it may distinguish between the two by such tests as it thinks appropriate. The relator does not challenge the test here applied, so far as concerns the deportation order itself; he agrees that, so far as his interest in residing in this country was protected by statute—in so far as it was 'a legally protected interest'—it had been forfeited. *His position is that, being concededly eligible for suspension of deportation, he was entitled to the exercise of the Attorney General's discretion, and that it appears that this has not been in fact exercised in accordance with the limitations, which must be assumed to confine it.* Unless he is to be permitted a hearing to show that it has not been so exercised, he says that he will be denied 'due process of law.' It does not appear from the record that the Attorney General—through the Board, his delegate—has exercised his discretion in disregard of any implied limitations. We will assume arguendo that the contrary might appear: i. e., that the reason given might be clearly irrelevant that a court could say that the Attorney General had transgressed the statute. Suppose, for example, that he denied suspension because the alien had become too addicted to attending baseball games, or had bad table manners. But membership, even past membership, in an organization which the Attorney General has 'proscribed' may make an alien's continued residence prejudicial to the public weal. True, without an inquiry we cannot know whether membership in the 'Order' is prejudicial; for we cannot tell whether the Attorney General had adequate grounds for 'proscribing' it. On the other hand we cannot say that he did not; and, if the relator has the privilege of inquiring into the grounds, he has been wronged, and the writ should have gone. An alien has no such privilege; unless the ground stated is on its face insufficient, he must accept the decision, for it was made in the 'exercise of discretion,' which we have again and again declared that we will not review.

"Nor has the relator any constitutional right to demand that we

---

1. It is true that in the Accardi case, such regulations were those in effect under Section 19(c) of the 1917 Act, 8 U.S.C. § 155(c). But in this same case, the Court points out the existence of corresponding sections under the 1952 Act, 8 C.F.R., Rev.1952, Pts. 242-244 & 246. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, at page 265, 74 S.Ct. 499, at page 502. It holds that these regulations have the "force and effect of law", and supplement the bare bones of the statute.

should. As we have said, any 'legally protected interest' he ever had has been forfeited by 'due process of law'; forfeited as completely as a conviction of crime forfeits the liberty of the accused, be he citizen or alien. The power of the Attorney General to suspend deportation is a dispensing power, like a judge's power to suspend the execution of a sentence, or the President's to pardon a convict. *It is a matter of grace, over which courts have no review, unless—as we are assuming— it affirmatively appears that the denial has been actuated by considerations that Congress could not have intended to make relevant.* It is by no means true that 'due process of law' inevitably involves an eventual resort to courts, no matter what may be the interest at stake; not every governmental action is subject to review by judges." (Emphasis supplied.) United States ex rel. Kaloudis v. Shaughnessy, 2 Cir., 180 F.2d 489, 490–491. See also Arakas v. Zimmerman, 3 Cir., 200 F.2d 322, at page 324.

If the language used by the Board of Appeals has any meaning, it means the Board of Appeals has given petitioner a hearing, and ruled against her, finding the facts "not persuasive that the case merits the exercise of the discretionary authority".

The Board of Appeals did not take the ultimate position that petition was not entitled to have the Board exercise its discretion. It did point out:

(a) that an application for discretionary relief must, by the precise wording of the remedial statute, and by previous Board decisions, be filed during the immigration hearing;

See Perez-Perez v. Westmoreland, D. C., 122 F.Supp. 385;

(b) that petitioner obviously could not bring herself within such language nor the previous decisions of the Board, but that she should be held to some standard, to-wit, a prompt exercise of any privilege that Congress may have granted her;

(c) that 8 C.F.R. 6.21 required that motions to reopen be supported by affidavits or other evidentiary material. Despite this, petitioner had personally supplied no affidavit, or other showing either with respect (1) to her present membership in the Communist Party, or the lack of it; (2) the extent of her activities while a member, or the lack thereof; (3) detailed information as to the hardship which she felt would result to her if she were deported.[2]

(d) that 8 C.F.R. 6.21 provides that there shall be included in the motion to reopen, a statement by or on behalf of the moving party declaring whether or not the alien is the subject of any criminal proceedings under Section 242(e) of the Act. Petitioner's motion failed to comply with this requirement.

(e) that where the motion is to secure discretionary relief, there is to be included a statement as to whether or not the alien is subject to *any* pending criminal prosecution. (Emphasis added.) Petitioner's motion failed to comply with this requirement.

■ Petitioner seeks to excuse compliance with requirement (d) above, upon the ground that the respondent knows the answer. This might perhaps be a

---

**2.** In this connection it is to be observed that no affidavit of any kind was filed by petitioner herself. The only affidavit filed on behalf of petitioner was that of her attorney. It is denominated "Affidavit", but its first paragraph is a pro forma verification of the petition (also signed by the attorney), and the second paragraph reads as follows:

"That petitioner is prepared to present evidence proving that she is entitled to suspension of deportation under Section 244(a) (5) of the Act."
This is a pure conclusion, premised on hearsay, arrived at by a person other than the real party in interest. In a similar type of case, an allegation that "[the alien] had 'exhausted each and every administrative remedy provided by law'" was held a mere conclusion. Barreiro v. Brownell, 9 Cir., 215 F.2d 585, 587.

sufficient excuse, were it the only omission by petitioner, but it in no way excuses the failure to comply with the requirement of (e) above, which is essential information, going to the very heart of the exercise of clemency sought by petitioner, and relates to facts known only to her.

In petitioner's reply to the Government's return to the order to show cause, she supplies *some* of the "evidentiary material" required by the regulations. For example, she states specifically under oath she is not the subject of any criminal proceedings under Section 242 (a) of the Immigration and Nationality Act, and she states specifically under oath that she is not subject to *any* pending criminal prosecution. (Emphasis added.) She at no time specifically touches upon the further matter mentioned by the Board of Immigration Appeals, when it stated in its order:

"The respondent (petitioner) declined to testify at the hearing on advice of counsel. The motion to reopen contains no information as to whether the respondent admits that she was a member of the Communist Party, and if so, whether such membership has terminated and the date of termination."

This can hardly be an inadvertent omission. In petitioner's reply to the Government's return on the order to show cause, petitioner "admits that she declined to testify at the hearing in 1949 concerning membership in the Communist Party in 1938 and 1939",[3] and thereupon, prefers not to make any statement of fact as to present membership in the Communist Party, but instead realleges the *conclusion of law that she comes* within the provisions of Section 244(a, b) of the Immigration and Nationality Act of 1952, and is therefore entitled to a hearing and "desires to complete the applicable form", in accordance with the statute and the applicable regulations.

This indicates a calculated preference, at this late date, to avoid compliance with the regulations, requiring "affidavits or other evidentiary matter". Such affidavits and matter we conclude, are to be based on facts, and not mere conclusions. The Board of Immigration Appeals and the Attorney General, and the Congress, are entitled to no less in their consideration of the advisability of an act of grace with respect to an alien whose rights and privileges have had for so many years such scrupulous respect. And this, as this Court said in its 1954 opinion, despite, "the administrative findings" that (she) was "not merely * * * a member of the Communist Party of the United States in 1938, but that during that period such Party advocated and taught the overthrow of the Government of the United States by force and violence and circulated and distributed printed matter so advocating." [215 F.2d 378.]

There is no question but that the Immigration and Nationality Act of 1952 itself, 8 U.S.C.A. § 1103, and the regulations issued thereunder, 8 C.F.R. Sec. 6.1(d), give the Board of Appeals the authority and right to exercise the powers of the Attorney General with respect to any discretionary relief. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681; United States ex rel. Adel v. Shaughnessy, 2 Cir., 183 F.2d 371; Kavadias v. Cross, D.C., 82 F.Supp. 716.

The regulations prescribing procedures to be followed in processing aliens' applications for suspension of deportation, have the force and effect of law. United States ex rel. Accardi v. Shaughnessy, supra.

Petitioner's claim that no discretion was exercised, and that there has been an unlawful refusal to so exercise its discretion is completely answered, first, from a factual standpoint by the

3. These dates are not mentioned in the Board of Immigration Appeals' discussion, but such limitation is inserted by petitioner in her reply to the return on the order to show cause.

specific language used by the Board, and secondly, from a legal standpoint, by the case of United States ex rel. James v. Shaughnessy, 2 Cir., 202 F.2d 519.

In that case, as here, the petitioner raised no question as to the deportation order itself. But he sought there, as petitioner does here, to review the exercise of discretion. Judge Chase said, at page 521:

"The premise on which his constitutional argument is based is unsound and we do not reach any constitutional question on this record. On the contrary, it is abundantly clear that he has been given administrative consideration of his application on the basis of individual merit, or the lack of it, with recognition of his right to make the application. As the opinion of the Board of Appeals disclosed, its decision was an actual exercise of discretion in the light of 'respondent's own statements and other evidence of record'."

Further, the courts have no reviewing power under the claim of due process of law, unless the denial of discretionary relief was arbitrary. United States ex rel. Kaloudis v. Shaughnessy, 2 Cir., 180 F.2d 489. Here it was just the reverse.

Finally, petitioner urges that in cases allegedly similar in facts, the Board of Immigration Appeals has exercised its favorable discretion, and hence, its present refusal to exercise that same favorable consideration herein, constitutes an abuse of discretion. This is disposed of by the Supreme Court's characterization in the Accardi case, of such a point as "wholly frivolous". United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 264, note 5, 74 S.Ct. 499, 501, 98 L.Ed. 681. Here the lower court had found an offer of proof in this regard was immaterial.

Under all circumstances here existing, the judgment of the lower court is affirmed.

Affirmed.