## ARAKAS v. ZIMMERMAN.
### No. 10753.

United States Court of Appeals
Third Circuit.

Argued Oct. 14, 1952.

Decided Dec. 4, 1952.

Lena L. Orlow, Philadelphia, Pa. (Orlow & Orlow, Philadelphia, Pa., on the brief), for appellant.

Alfred L. Luongo, Asst. U. S. Atty., Philadelphia, Pa. (Gerald A. Gleeson, U. S. Atty., Philadelphia, Pa., William B. Taffet, District Counsel, Immigration and Naturalization Service, Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an appeal from an order of the district court granting appellee's motion to dismiss a petition for a writ of habeas corpus.

Appellant, a Greek national, entered this country as a seaman in 1927. While here he jumped ship and thereafter remained illegally in the United States. Sometime later expulsion proceedings were instituted against him. After hearing he was ordered deported and was actually deported on November 9, 1932. On October 26, 1942, he reentered the United States as an alien sea-

man. He again jumped ship and stayed illegally in this country. He was arrested and on April 10, 1943, after hearings on the warrant of arrest, was ordered deported. On his motion the proceedings were reopened and further hearings were held on March 9 and April 18, 1944. Deportation was recommended in an opinion filed July 29, 1944, by the presiding inspector. On November 3, 1944, the Board of Immigration Appeals granted appellant permission to depart voluntarily four months after the close of hostilities in Europe. In 1946 and 1947 the Commissioner of Immigration and Naturalization granted several extensions of time to appellant within which to depart voluntarily. These were principally to enable him to obtain certain medical treatments. On August 5, 1947, the Commissioner again ordered appellant's deportation. An appeal was taken to the Board and dismissed by that body. In January, 1948, a private bill was introduced in the United States Senate on appellant's behalf. Deportation was held up during its pendency. It eventually failed of passage.

On October 6, 1949, appellant was ordered to surrender for deportation. He petitioned the Commissioner for a stay so that he might become eligible for a suspension of deportation under the seven years' residence provision of a 1948 amendment to the Immigration Act, 8 U.S.C.A. Section 155(c), infra. The Commissioner denied the application. Arakas appealed to the Board and at the same time moved for reopening of the proceedings for consideration of

suspension of deportation. The Board denied both the application for stay and motion to reopen by its order of October 26, 1949. He, having by that time established his seven years' residence, applied to the Board for a reopening of the proceedings. The motion was denied and the petition for habeas corpus followed. The motion to dismiss that petition was granted by the district court on September 26, 1951.

The issue before us is whether, on the above facts, due process requires that appellant be granted a hearing on his application for suspension of deportation.

▇ Under the governing law, 8 U.S. C.A. Section 155(c), the pertinent amendment to which became effective July 21, 1948,[1] it was within the discretion of the Attorney General to suspend the deportation of Arakas as the latter's status came within the provisions of the section. He had resided in the United States continuously for seven years and was so residing upon the effective date of the amendment to the statute. The fact that a large part of that residence was within a period when he was actually under an order of deportation does not militate against its validity, and this is conceded by the Government. It was on the authority of the residence clause of 155 (c) that Arakas made his application, as he had the right to do. The asserted necessity of a hearing on his application, however, presents a far different question.

By the regulations of the Attorney General, 8 C.F.R. 90.11(b),[2] the granting or

1. "In the case of any alien (other than one to whom subsection (d) is applicable) who is deportable under any law of the United States and who has proved good moral character for the preceding five years, *the Attorney General may* (1) permit such alien to depart the United States to any country of his choice at his own expense, in lieu of deportation; or (2) *suspend deportation of such alien* if he is not ineligible for naturalization or if ineligible, such ineligibility is solely by reason of his race, *'if he finds * * * (b) that such alien has resided continuously in the United States for seven years or more and is residing in the United States upon the effective date of this Act.'"* (Emphasis supplied.)

2. "Reconsideration or reopening of any case in which an order has been entered by the Board of Immigration Appeals (except as provided in Section 150.11b of this chapter), whether requested by the Commissioner or by the party against whom the order is effective or his counsel or representative, shall be only upon written motion. *The Board may, in its discretion, grant or deny such motion,* and pending its consideration of the motion may stay deportation. A motion to reopen shall state the new facts to be proved at the reopened hearing and shall be supported by affidavits or other evidentiary material. A motion to reconsider shall state the reasons for reconsideration and shall be supported by such precedent de-

denial of the motion to reopen the hearing was expressly a matter for the discretion of the Board. The Board followed the prescribed procedure with exactitude. Its order of October 31, 1949, denying the motion outlined the history of Arakas' illegal reentry and subsequent stay in this country. It set out that by August 5, 1947, when his deportation was again ordered, there had been ample opportunity afforded him to depart voluntarily; that upon the introduction of private legislation on his behalf the proceedings against him had been halted until after the bill had failed of passage. It stated that his seven years' residence was acquired under the circumstances shown in the record and which we have briefly outlined above. It called attention to the fact that the provisions of 8 U.S.C.A. Section 155(c) are discretionary and that appellant's previous application based on that statute had been denied. It concluded by saying, "For all of the reasons hereinabove given, and upon consideration of all of the evidence of record, it is the conclusion of this Board that the motion must necessarily be denied."

■ Appellant contends that Subsection 150.6(g) of the Regulations [3] gave him the right to a hearing on his motion and that at such hearing he was entitled to introduce evidence on behalf of his application. This claim is completely without foundation. The particular subsection relied on relates to and outlines the procedure an alien may use *during his deportation hearing* in order to apply for suspension of deportation under 8 U.S.C.A. Section 155(c). It has no bearing upon the present facts. The application at bar which asks that the *deportation hearing be reopened* illustrates this. At the time it was made the deportation hearings on Arakas had been long since concluded. There had been no motion of that type during those hearings, nor could there have been because the seven years' residence provision of Section 155(c) of the immigration

law did not come into existence until 1948 and in 1944 Arakas had only been in the United States for one and a half years.

■ The two opinions cited in support of appellant are of even less help to him than are the Regulations. We agree entirely with the holding in Alexiou v. McGrath, D.C.1951, 101 F.Supp. 421, but it is *not in point here. In that case the alien applied for suspension of deportation at the deportation hearing,* presumably under 8 C.F.R. 150.6(g), on the ground that she was married to an American citizen. Because she had made the request in accordance with the Regulation she was clearly entitled to, and was granted, a hearing on her application. The Commissioner affirmed the refusal of suspension of deportation partly on the basis of confidential information not part of the hearing record. The district court reversed because of that serious error. The other decision relied upon by appellant is Bauer v. Shaughnessy, Civil 50/217 (S.D. N.Y.1949), and it does take the view that there must be a hearing on the type of application before us. However, there was a later memorandum filed by the district judge in that case on June 10, 1950, in which the judge reversed his 1949 decision, stating: "Since my previous opinion herein, the United States Court of Appeals for the Second Circuit has held that the decision of the Attorney General in refusing discretionary relief to a deportable alien is not *subject to judicial review at least where* the ground stated for the refusal is not 'on its face insufficient'. United States ex rel. Kaloudis v. Shaughnessy, 180 F.2d 489. That case is controlling here." This view has the solid support of the decisional law on the subject. In a situation quite similar to the present one we affirmed the district court in denying a petition for habeas corpus which was founded on the Board's refusal to allow an alien a hearing on his petition to reopen. United States ex rel. Zabadlija v. Garfinkel, 3 Cir., 1949, 173 F.

cisions as are pertinent. Motions shall be filed in triplicate with the Board of Immigration Appeals. If oral argument upon a motion is desired, it shall be so stated. The Board of Immigration Appeals, in its discretion, may grant or deny

oral argument. * * * " (Emphasis supplied.)

3. All references to 8 C.F.R. are to those Regulations in effect at times pertinent to this appeal.

2d 222. To the same effect, United States ex rel. Adel v. Shaughnessy, 2 Cir., 1950, 183 F.2d 371; Kavadias v. Cross, D.C.N.D. Ind.1948, 82 F.Supp. 716, where the facts are very close to the present issue; Vergas v. Shaughnessy, D.C.S.D.N.Y.1951, 97 F. Supp. 335.

Under the law the Board of Immigration Appeals, acting for the Attorney General, had the duty of exercising its discretion and deciding whether appellant's hearing should be reopened and the order for his deportation reconsidered. We find that it did this and that its decision not to reopen the hearing was properly based upon sufficient evidence. We have no right to disturb that determination.

The judgment of the district court will be affirmed.