Matheos Vasilios **TSATSARONIS**

v.

**John W. HOLLAND, District Director, Immigration and Naturalization Service, Philadelphia, Pennsylvania.**

Civ. A. No. 21856.

United States District Court
E. D. Pennsylvania.
Feb. 12, 1957.

Gregory G. Lagakos, Rappaport & La-
gakos, Philadelphia, for plaintiff.

W. Wilson White, Alan J. Swotes,
Philadelphia, Pa., for defendant.

LORD, District Judge.

On December 27, 1956, this Court is-
sued a temporary restraining order en-
joining the defendant, John W. Holland,
District Director of the Immigration and
Naturalization Service, pending hearing,
from proceeding toward deportation of
the plaintiff.

At the hearing, argument was heard
on plaintiff's Petition for Judicial Review
of Administrative Order and for Per-
manent Restraining Order and defend-
ant's Motion for Summary Judgment.

Petitioner is a citizen of Greece who
last entered the United States as a crew-
man on the S. S. Demetrios on Novem-
ber 9, 1946. Upon his arrival he was
granted a landing permit for the period
his ship remained in port, not to exceed
29 days. He has remained in the United
States continuously since that time but
is presently subject to an Order of De-
portation, with permission granted for
voluntary departure.

Petitioner now seeks to set aside this
administrative determination. Defend-
ant, on his part, resists plaintiff's motion
and also asks for summary judgment on
the ground that there is no genuine is-
sue as to any material fact and that,
therefore, the defendant is entitled to
judgment as a matter of law.

Plaintiff attacks an administrative or-
der, issued after the original Order of
Deportation, which denied suspension of
the deportation. It is his position that
this denial of suspension was arbitrary
and capricious, in that it failed to rec-
ognize that the deportation would cause
him an "unusual hardship."

To that extent there is an issue
of fact. If, however, the denial order
resulted from the exercise of admin-
istrative discretion, there is indeed no
genuine issue of fact, and defendant is
entitled to judgment as a matter of law.

The Act of Congress authorizes one
who is subject to deportation to apply for
suspension of deportation, just as the
plaintiff has done, i. e. § 244(a) of the
Immigration and Nationality Act of
1952, P.L. 414, Chap. 477, Title 8 U.S.
C.A. § 1254(a).

More particularly, the act specifies that
the Attorney General, under part (c) of
said section, *may* suspend the deportation
of a deportable alien who meets the pre-
requisites set out in (a) (1) thereof.

The Court of Appeals for the Third
Circuit has heretofore recognized the
narrow scope of judicial review in cases
like the present. In Arakas v. Zimmer-
man, 3 Cir., 1952, 200 F.2d 322, in the
course of commenting upon the ultimate
decision in United States ex rel. Bauer v.
Shaughnessy, D.C.S.D.N.Y.1950, 115 F.
Supp. 780, the following language was
quoted with approval, 200 F.2d at page
324:

"* * * the decision of the At-
torney General in refusing discre-
tionary relief to a deportable alien
is not subject to judicial review at
least where the ground stated for the
refusal is not 'on its face insuffi-
cient'. United States ex rel. Kalou-
dis, v. Shaughnessy, 2 Cir., 180 F.2d
489. * * *"

The Supreme Court of the United
States, in the recent case of Jay v. Boyd,
1956, 351 U.S. 345, 76 S.Ct. 919, 100 L.
Ed. 1242, has gone a considerable dis-
tance beyond the previous authorities.
There the denial of an application for
suspension, based on the use of confi-
dential information by the Board of Im-
migration appeals, was sustained by a
sharply divided court. Not confined to
the matter of the use of undisclosed in-
formation, however, is the following
statement in that case—which unmistak-
ably governs this Court as to the pres-

ent problem, 351 U.S. at page 353, 76 S.Ct. at page 924:

"Eligibility for the relief here involved is governed by specific statutory standards which provide a right to a ruling on an applicant's eligibility. However, Congress did not provide statutory standards for determining who, among qualified applicants for suspension, should receive the ultimate relief. That determination is left to the sound discretion of the Attorney General. The statute says that, as to qualified deportable aliens, the Attorney General 'may, in his discretion' suspend deportation. It does not restrict the considerations which may be relied upon or the procedure by which the discretion should be exercised. Although such aliens have been given a right to a discretionary determination on an application for suspension, cf. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681, a grant thereof is manifestly not a matter of right under any circumstances, but rather is in all cases a matter of grace. Like probation or suspension of criminal sentence, it 'comes as an act of grace', Escoe v. Zerbst, 295 U.S. 490, 492, 55 S.Ct. 818, 819, 79 L.Ed. 1566, and 'cannot be demanded as a right', Berman v. United States, 302 U.S. 211, 213, 58 S.Ct. 164, 166, 82 L.Ed. 204. And this unfettered discretion of the Attorney General with respect to suspension of deportation is analogous to the Board of Parole's powers to release federal prisoners on parole * * *."

■ The foregoing rules are by no means novel. It is settled law that, in these cases, the judicial review is limited to ascertaining the denial to have been neither arbitrary nor capricious, United States ex rel. Weddeke v. Watkins, 2 Cir., 1948, 166 F.2d 369, 372, certiorari denied 333 U.S. 876, 68 S.Ct. 904, 92 L.Ed. 1152. Indeed, plaintiff doubtless concedes that rule, since his petition—apart from jurisdictional statements and recitals of facts—consists almost exclusively of allegations that the refusal of suspension was, in one respect or another, arbitrary and capricious.

■ An examination of the record indicates that, after hearing, a Special Inquiry Officer ordered suspension of deportation. His order was reversed by the acting Regional Commissioner for the reason that:

" * * * the alien, residing here for a relatively short period, has failed to establish that his deportation would result in unusual hardship to him. Furthermore, while he meets the statutory requirement as to physical presence, such residential status was acquired after the institution of deportation proceedings."

This order was affirmed on an appeal to the Board of Immigration Appeals, which held:

"The respondent's residence in the United States was accumulated after he had failed to depart under a grant of voluntary departure on May 15, 1953. A warrant of arrest in deportation proceedings had been served on him on September 19, 1952. Although he has been under deportation proceedings for a long period of time and knew that he had been adjudged to be illegally in the United States, he has not disposed of his interest in a business in the United States—an interest which he acquired although he knew he had no right to remain in the United States permanently. Furthermore, in the long period available to them neither respondent nor his brother who is a United States citizen and a partner with him in a business took any steps to assure the continuance of the business in a manner which would not cause undue hardship to the brother. He did not reg-

ister as an alien because he did not want to be arrested by the Service and failed to complete an address report card in 1952 for fear of apprehension. He was convicted and fined the sum of $350 for his failure to comply with the alien registration laws."

It is apparent that the procedures and their final result involved the exercise of administrative discretion as defined in the cases. It is doubtful whether this Court can go into the merits of that decision without exceeding the permitted scope of review.

From the record, it is apparent that the Attorney General withheld his dispensing power in the exercise of his discretion. The term "exercise of discretion" is here used in the sense of, and within the definitions of, the controlling cases decided by the Courts of the United States heretofore cited.

The same result may be stated in another way. That is, in considering the entire record, the reasons given for the refusal to grant suspension are not insufficient. Therefore, it is not for this Court to say that the administrative action was arbitrary or capricious.

For the foregoing reasons, it is ordered:

Defendant's Motion for Summary Judgment is hereby granted.

The Temporary Restraining Order of this Court, issued December 27, 1956, enjoining defendant, John W. Holland, District Director of the Immigration and Naturalization Service, from taking any further action looking toward the deportation of Matheos Vasilios Tsatsaronis, and from effecting the deportation of Matheos Vasilios Tsatsaronis, is hereby dissolved.

Plaintiff's Petition for Judicial Review of Adminstrative Order and for Permanent Restraining Order is hereby denied.